UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KLARA CELA,

                 Plaintiff,

-v-

NEWYORK-PRESBYTERIAN
HOSPITAL, *et al.*,

                 Defendants.

22-CV-5107 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

    Plaintiff Klara Cela ("Cela") brings this action against Defendants NewYork-Presbyterian Hospital ("NYP") and Della Info Tech Inc. ("Della"), claiming that Defendants violated Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). Cela alleges that Defendants discriminated and retaliated against her on the basis of her pregnancy. Presently before the Court are NYP's and Della's motions to dismiss.

## I.  Background

### A.  Factual Background

    The following facts are drawn from the amended complaint and are assumed true for the purposes of this motion. (*See* ECF No. 17 ("Compl.")) Cela is a woman who is certified as a medical assistant, phlebotomy technician, and electrocardiogram technician, and who has extensive experience in the medical field. (Compl. ¶¶ 7, 35.) Della is a corporation that provides staffing solutions that include temporary, temporary hire, per diem, and permanent staffing of IT and non-IT professionals. (Compl. ¶ 19.) On October 6, 2021, Ramya Ramesh ("Ramesh"), a recruiter from Della, contacted Cela regarding a medical assistant position at NYP Columbia University Medical Center. (Compl. ¶ 36.) On or about October 11, 2021, Ramesh scheduled an

interview for Cela with Josie Dominguez ("Dominguez"), the program manager at School Based Health Centers NYP Hospital Ambulatory Care Network, which Cela attended by Zoom. (Compl. ¶¶ 39-40.)  Ramesh then informed Cela that NYP had hired her pending receipt of her background check results, resume, school diplomas, job referrals, recommendation letters, driver's license, and other documents.  (Compl. ¶ 42.)

Della made several requests of Cela in connection with her employment onboarding at NYP.  On or about October 12, 2021, Karl Fernandez, associate manager at Della, requested that Cela appear for an appointment at Mobile Health for a medical clearance as a condition of Cela's employment at NYP.  (Compl. ¶ 44.)  Cela also gave her consent to Della to perform a mandatory pre-employment check, including a medical examination.  (Compl. ¶ 45.)  At the time, Cela was pregnant, which she disclosed during the medical examination.  (Compl. ¶ 47.) The results of Cela's medical examination, including information regarding Cela's pregnancy, were promptly forwarded to both NYP and Della.  (Compl. ¶ 48.)  In addition, Della's account manager requested that Cela obtain BLS (CPR) certification and a flu shot, and Cela complied with both requests.  (Compl. ¶ 50.)

On Cela's first day on the job, which was on or about November 3, 2021, Cela worked along with Eva Osborne ("Osborne"), a medical assistant, who allegedly told Cela that Cela was "a fast learner."  (Compl. ¶¶ 52-54.)  At some point during that day, Cela experienced some nausea due to her pregnancy and disclosed her pregnancy to Osborne.  (Compl. ¶ 55.)  Osborne allegedly encouraged Cela not to tell anyone at NYP, because "NYP would not hire [her]." (Compl. ¶ 56.)  Upon the successful completion of a two-month probation period, there was a prospect of permanent employment at NYP.  (Compl. ¶ 38.)

On her second and third days on the job, Cela reported to the work sites to which Dominguez directed her. (Compl. ¶¶ 38-43.) On Cela's second day, Cela once again worked with Osborne, and on Cela's third day, Cela worked with Mildred Sosa, another medical assistant. (Compl. ¶¶ 57-64.) At 4:00 p.m. on Cela's third day on the job, Ramesh called Cela and said that one of the managers at Della wanted to speak to her. (Compl. ¶ 65.) Cela alleges that she then spoke with a male manager, who told her that NYP wanted to terminate her employment based on three reasons (which were later memorialized in an email from the Director of HR & Operations at Della): first, that Cela had long nails inappropriate for medical practice; second, that Cela was unable to work independently; and third, that Cela took an incorrect blood pressure on a pediatric patient. (Compl. ¶¶ 67, 72, 73, 80.) Cela, however, alleges facts to contradict these justifications. First, Cela alleges that she did not have long nails at the time and that she offered to prove it to the manager by showing him over FaceTime, but he declined. (Compl. ¶¶ 67-68.) Second, Cela alleges that she received positive feedback from the two individuals who had trained her. (Compl. ¶ 72.) Third, Cela alleges she did not work directly with patients, but only provided paperwork assistance to the medical assistants she worked with during the training. (Compl. ¶ 73.)

Cela alleges that the purported reasons were pretextual, and that NYP and Della instead terminated Cela because of her pregnancy. (Compl. ¶ 74.) An unnamed NYP employee allegedly informed Cela that the employee saw the paperwork related to Cela's physical examination (including results revealing her pregnancy) on the supervisor's desk. (Compl. ¶ 76.) Cela further alleges that an NYP employee informed Cela that she believed that Cela was terminated due to her pregnancy. (Compl. ¶ 77.)

**B.     Procedural Background**

Cela filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC") on January 21, 2022, and received Notice of Right to Sue on June 16, 2022. (Compl. ¶ 5.) Cela commenced this action on June 17, 2022. (ECF No. 1.) Della and NYP each filed motions to dismiss the complaint on September 9, 2022. (ECF Nos. 11, 13.) Cela filed an amended complaint on September 23, 2022. (ECF No. 17.) Della and NYP each filed motions to dismiss the amended complaint on October 19, 2022. (ECF Nos. 20, 21.) Cela filed an opposition to the motion to dismiss the amended complaint on November 2, 2023. (ECF No. 23.) Della and NYP filed their replies in support of their motions to dismiss the amended complaint on November 9, 2022. (ECF Nos. 24, 25.)

**II.    Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002). While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, the Court must draw "all inferences in the light most favorable to the nonmoving party[]," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

**III.   Discussion**

Della argues that (1) Cela fails to adequately allege joint employer liability; (2) Cela fails to plausibly allege a claim for discrimination; (3) Cela fails to state an aiding and abetting claim; and (4) the Court should decline to exercise supplemental jurisdiction over Cela's state law

4

claims. (ECF No. 20.) NYP joins Della's arguments that Cela fails to plausibly allege a claim for discrimination, and that the Court should decline to exercise supplemental jurisdiction over Cela's state law claims. (ECF No. 22 at 6.) These four arguments are considered in turn.

### A.   Whether Della and NYP Were Cela's Joint Employers

Della argues that Cela fails to allege facts sufficient to demonstrate that Della may be held liable under a theory of joint employer liability. To be held liable for employment discrimination under Title VII, Della must have been Cela's "employer." 42 U.S.C. § 2000e-2(a); 42 U.S.C. § 12111(5)(a). Under the joint employer doctrine, "an employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity, may impose liability for violations of employment law on the constructive employer, on the theory that this other entity is the employee's joint employer." *Arcuelo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005); *see also Knight v. State Univ. of N.Y. at Stony Brook*, 880 F.3d 636, 642 (2d Cir. 2018). To establish joint employer liability, there must be "sufficient evidence of immediate control over the employees." *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 322-23 (S.D.N.Y. 2020) (quoting *Serv. Emps. Int'l Union, Local 32BJ v. NLRB*, 647 F.3d 435, 442 (2d Cir. 2011) (alteration omitted) (internal quotations omitted)). "While [the Second Circuit has] not yet 'fully . . . described a test for what constitutes joint employment in the context of Title VII,' *Arcuelo*, 425 F.3d at 199 n.7, factors courts have used to examine whether an entity constitutes a joint employer of an individual include 'commonality of hiring, firing, discipline, pay, insurance, records, and supervision.'" *Shiflett v. Scores Holding Co.*, 601 F. App'x 28, 30 (2d Cir. 2015) (summary order) (quoting *St. Jean v. Orient-Express Hotels Inc.*, 963 F. Supp. 2d 301, 308 (S.D.N.Y. 2013)).

Cela makes several allegations that go to Della and NYP's status as her joint employers. Cela alleges that Della issued her an employee handbook, that Cela signed a contract indicating that the relationship between Cela and Della "shall be that of employer employee relationship for a stipulated duration on a client project," and that the contract specified that she might "receive direction and supervision from either [Della] or [NYP]." (Compl. ¶¶ 24-29.) In addition, Cela alleges that Della played the primary role in recruiting, hiring, and firing Cela for her position at NYP. (Compl. ¶¶ 22, 36, 39-51.) Together, these facts plausibly allege a commonality of hiring, firing, discipline, pay, records, and supervision, and that Della maintained immediate control over Cela. Therefore, the Court concludes that Cela has pleaded sufficient facts to establish a prima facie case that Della and NYP were Cela's joint employers.

Della argues that even if Cela has adequately alleged Della's employer status, Della cannot be held liable because Cela fails to plausibly allege that Della itself engaged in discriminatory conduct, or that Della knew or should have known of the discriminatory conduct and failed to take corrective measures within its control. "Even where two companies are deemed a joint employer, . . . it is not necessarily the case that both are liable for discriminatory conduct in violation of Title VII." *Lima v. Addeco*, 634 F. Supp. 2d 394, 400 (S.D.N.Y. 2009), *aff'd sub nom. Lima v. Adecco and/or Platform Learning, Inc.*, 375 F. App'x 54 (2d Cir. 2010) (summary order). "[C]ourts have found that even when a plaintiff establishes an entity's status as part of a joint employer, the plaintiff must still show 'that the joint employer knew or should have known of the [discriminatory] conduct and failed to take corrective measures within its control.'" *Id.* (quoting *Watson v. Adecco Emp. Servs., Inc.*, 252 F. Supp. 2d 1347, 1357 (M.D. Fla. 2003)).

Della points to *Sosa v. Medstaff, Inc.*, a case in which a court in this district determined that a staffing agency may have served as a plaintiff's joint employer, the plaintiff failed to plead sufficient facts to hold the staffing agency vicariously liable for an employer's discriminatory conduct. *See Sosa v. Medstaff, Inc.*, No. 12-CV-8926 (NRB), 2013 WL 6569913, at *3-4 (S.D.N.Y. Dec. 13, 2013). But *Sosa* is distinguishable. First, in *Sosa*, the employer was "not alleged to have had contact, much less a relationship, with [the staffing agency]." *Id.* at *4. Second, the plaintiff in *Sosa* did not allege any further discriminatory treatment after she notified the staffing agency. *Id.*

Here, Cela has alleged facts showing that Della and NYP had a relationship in which they, at the very least, communicated regarding Cela's termination. It was Della that called Cela to notify her of her termination from NYP and the reasons for her termination. (Compl. ¶¶ 65-73.) Della also sent Cela an email containing the same information. (Compl. ¶ 80.) Cela has also alleged facts demonstrating that Della failed to take corrective measures within its control. When the manager from Della told Cela that the first reason for her termination was that Cela had long nails, Cela offered to FaceTime the manager to prove that this was false, but the manager refused. (Compl. ¶ 68.) Moreover, Della chose to terminate Cela instead of placing her with another employer. (Compl. ¶ 84.) Therefore, the Court concludes that Cela has plausibly alleged that Della knew or should have known of the discriminatory conduct and failed to take corrective measures within its control.

**B.      Whether Cela Has Plausibly Alleged a Claim for Discrimination**

Della and NYP argue that Cela has failed to allege facts that plausibly give rise to an inference of unlawful discrimination under Title VII, the NYSHRL, and the NYCHRL. "At the pleadings stage, . . . a plaintiff must allege that the employer took adverse action against her at

least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d 72, 87 (2d Cir. 2015) (citing *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). An inference of discrimination can arise from circumstances including, but not limited to, "the sequence of events leading to the plaintiff's discharge." *Littlejohn*, 795 F.3d at 312 (internal quotation marks and citation omitted).

Cela alleges facts that "indirectly show discrimination by giving rise to a plausible inference of discrimination," *Vega*, 801 F.3d at 87, by establishing a "sequence of events leading to the plaintiff's discharge," *Littlejohn*, 795 F.3d at 312. First, Cela alleges facts that throw into question whether the justifications that the manager communicated to Cela were merely pretextual. The manager told Cela that her employment was terminated for three reasons: first, that Cela had long nails inappropriate for medical practice; second, that Cela was unable to work independently; and third, that Cela took an incorrect blood pressure on a pediatric patient. (Compl. ¶¶ 67, 72, 73, 80.) Cela alleges that she did not have long nails at the time, and that she offered to prove it to the manager over FaceTime, but that the manager was not interested in determining the veracity of her claim. (Compl. ¶ 68.) Cela also alleges that contrary to the manager's second justification, Cela had received positive feedback from the two individuals who had trained her. (Compl. ¶ 72.) Finally, contrary to the manager's third justification, Cela alleges that she did not work directly with patients, but only provided paperwork assistance to the medical assistants she worked with during the training. (Compl. ¶ 73.)

Cela also alleges sufficient facts to plausibly establish that her termination was a result of her pregnancy. An unnamed NYP employee allegedly informed Cela that she saw the

paperwork related to Cela's physical examination, including results revealing her pregnancy, on the supervisor's desk.  (Compl. ¶ 76.)  Cela further alleges that an NYP employee informed Cela that she believed that Cela was terminated due to her pregnancy.  (Compl. ¶ 77.)  Della and NYP argue that Cela could not have been terminated on the basis of her pregnancy because Della and NYP received the results of Cela's medical examination, which included information regarding Cela's pregnancy, "promptly" upon the completion of her medical examination, which took place well before Cela's first day on the job.  (ECF No. 20 at 14; ECF No. 22 at 8.)  However, while the facts as alleged establish that Della and NYP had access to the information regarding Cela's pregnancy promptly after Cela's medical examination, it is not clear when Della and NYP reviewed this information, which could have occurred after Cela began working.

The Court concludes that Cela has plausibly alleged a claim for discrimination.

### C. Whether Cela Has Plausibly Alleged an Aiding and Abetting Claim

"The New York Human Rights statutes provide that it is unlawful for a person 'to aid, abet, incite, compel, or coerce' any conduct prohibited by the statute." *Brice v. Sec. Operations Sys., Inc.*, No. 00-CV-2438 (GEL), 2001 WL 185136, at *4 (S.D.N.Y. Feb. 26, 2001) (quoting N.Y. Exec. Law § 296(6) and N.Y.C. Admin. Code § 8-107(6)).  "Courts have interpreted this language to require a showing that the defendant *actually participated* in the conduct giving rise to the claim of discrimination."  *Id*. (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir.1995) (additional citations omitted)).

For the same reasons that the Court concludes that Cela plausibly alleged that Della is liable for discrimination as a joint employer, the Court concludes that Cela has plausibly alleged that Della actually participated in the conduct giving rise to the claim of discrimination, and therefore, has plausibly alleged an aiding and abetting claim.

### D. Cela's State Law Claims

This Court must determine whether to exercise supplemental jurisdiction over Cela's NYSHRL and NYCHRL claims. "A district court 'may decline to exercise supplemental jurisdiction over [a pendent state law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction.'" *Williams v. N.Y.C. Health & Mental Hygiene*, 299 F. Supp. 3d 418, 428 (S.D.N.Y. 2018) (quoting 28 U.S.C. § 1367(c)(3)). Here, because Cela has plausibly alleged a pregnancy discrimination claim in violation of Title VII, this Court exercises its supplemental jurisdiction over Plaintiff's state and city claims.

## IV. Conclusion

For the foregoing reasons, Defendants' motions to dismiss are DENIED.

Defendants shall file answers to the amended complaint within 21 days after the date of this opinion and order.

The Clerk of Court is directed to close the motions at Docket Numbers 11 and 21.

SO ORDERED.

Dated: September 25, 2023
New York, New York

_____
J. PAUL OETKEN
United States District Judge

10